Lillian Wyer, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued April 5, 1984, before Judges MACPHAIL and DOYLE.

*Stephen F. Gold,* for petitioner.

*Phillip B. Rosenthal,* Assistant Counsel, for respondent.

OPINION BY JUDGE MACPHAIL, May 16, 1984:

The issue in this appeal involves the propriety of a decision of the Bureau of Blindness and Visual Services (BBVS) to cancel an agreement it made with Lillian Wyer (Petitioner), to operate a vending facility in the Delaware County Courthouse. The Department of Public Welfare (DPW) held a hearing following the agreement cancellation and subsequently affirmed the action of BBVS. The instant appeal followed.[1]

Petitioner has been a blind vendor for more than twenty-three years and currently operates a vending facility in the former Federal Courthouse at Ninth and Market Streets in Philadelphia. On May 25, 1982, Petitioner received an invitation to bid on a new vending facility in the Delaware County Courthouse. Petitioner submitted a bid for the facility and was notified, by letter dated June 11, 1982, that she had been awarded the location based on her seniority. The bid proposal states that, *"This acceptance and award constitutes a binding contract between the vendor and the Bureau of Blindness and Visual Services."* (Emphasis in original.) We also observe that pertinent BBVS regulations provide that a license to operate the

---

[1] BBVS initially challenges this Court's jurisdiction, contending that this is a contract claim against the Commonwealth over which the Board of Claims has exclusive jurisdiction. Section 4 of the Act of May 20, 1937, P.L. 728, *as amended,* 72 P.S. §4651-4. The claim here, however, does not arise from the contract entered into by Petitioner with the BBVS. The claim, instead, involves a matter of statutory and regulatory interpretation.

vending facility is granted to the vendor following the contract award. Section 7012.31 of the Policy and Procedure Manual of BBVS (BBVS Manual), 12 Pa. B. 984-5 (1982). Petitioner was scheduled to begin operating the new facility on July 2, 1982.

On June 29, 1982, however, Petitioner received a letter from BBVS cancelling her vending agreement. The basis for the cancellation was a request by Delaware County officials for a vendor other than Petitioner. The county officials had apparently received adverse comments from the U.S. Department of General Services (DGS) regarding Petitioner's operation of her present facility as well as another prior vending location on federal property. The County, accordingly, concluded that Petitioner was not "an acceptable vendor."

BBVS contends that it was required to cancel Petitioner's agreement based on the following regulation:

> [T]he [BBVS] may cancel a contract only in the following instances:
>
> . . . .
>
> b. request of the owner of the premises on which the facility is located . . . .

Section 7012.5(b) of the BBVS Manual, 12 Pa. B. 985. Petitioner contends, however, that the Randolph-Sheppard Act Amendments of 1974 (Randolph-Sheppard Act), which provides for federal financial participation in the state program, requires that BBVS make an independent evaluation of the merits of the County's concerns before the vending agreement may be cancelled. The pertinent federal provision states that,

> The State licensing agency shall, in issuing each such license for the operation of a vending facility, give preference to blind persons who are in need of employment. Each such license shall be issued for an indefinite period but may be ter-

minated by the State licensing agency *if it is satisfied* that the facility is not being operated in accordance with the rules and regulations prescribed by such licensing agency.

20 U.S.C. §107a (b) (1982) (emphasis added).

Petitioner also contends that she was entitled to a pre-termination hearing under applicable federal regulations. *See* 34 C.F.R. §395.7(b) (1983)[2]. BBVS agrees that Petitioner would have been entitled to a pre-termination hearing if her right to participate *in the program* were being terminated. BBVS argues, however, that only Petitioner's right to operate the Delaware County Courthouse facility was affected by its action and that Petitioner remains eligible to participate in the program. Thus, BBVS would conclude that a pre-termination hearing was not required.

Based on our review of the applicable regulations and statutory provisions, we must agree with Petitioner that before BBVS could properly cancel her new vending contract and license, it was required to independently assess whether the County's concerns were valid. While the County stated that its rejection of Petitioner was based solely on the letter it received from DGS, that letter does not appear of record. Moreover, the record contains no other clear indication of what the DGS concerns were. The testimony from BBVS officials also makes it evident that the BBVS itself regards Petitioner to be a competent vendor. Therefore, the BBVS decision to terminate Petitioner's new contract was based solely on the re-

---

[2] Both counsel in this case have incorrectly cited to 45 C.F.R. Part 1369 (1979) as including the pertinent federal regulations. In fact, 45 C.F.R. Part 1369 was redesignated as 34 C.F.R. Part 369 in 1980. *See* 45 Fed. Reg. 77369 (1980). In 1981, 34 C.F.R. Part 369 was again redesignated and now appears as 34 C.F.R. Part 395. *See* 46 Fed. Reg. 5417 (1981).

quest from Delaware County officials to provide another vendor.

BBVS argues that the Randolph-Sheppard Act requirement that licenses only be terminated when the State licensing agency *itself* is satisfied that a facility is not being operated properly does not apply to the cancellation of a specific facility agreement. We disagree. BBVS regulations define a "license" as "a written instrument, issued by the Department to a blind client, authorizing the operation of a vending facility." Section 7002 of the BBVS Manual, 12 Pa. B. 983. This definition tracks precisely the federal regulatory definition of a "license." 34 C.F.R. §395.1 (1983). BBVS regulations also provide that:

> After the contract between the vendor/ trainee and the [BBVS] has been made, [BBVS] issues a license for operation of the facility . . . . The license is valid until revoked by the [BBVS] upon cancellation of the contract . . . . The license is restricted to the operation by a specific vendor of a specific facility. A new license is issued for any transfer or promotion of the vendor.

Section 7012.31 of the BBVS Manual, 12 Pa. B. 984. As noted previously, BBVS regulations provide that one of the valid reasons for the cancellation of a contract is a request by the owner of the premises on which the facility is located that the contract be cancelled. Section 7012.5(b) of the BBVS Manual. Moreover, the regulations call for license revocation following the cancellation of a contract. Federal law requires, however, that before a license may be terminated, the State agency must be satisfied that the facility is not being properly operated. Since Petitioner had not yet started to operate the new facility, we believe that the proper inquiry for BBVS to ad-

dress is whether Petitioner is satisfactorily operating her present facility in light of the DGS charges. We conclude that applicable law does not permit BBVS to terminate a contract and revoke a license based solely on the request of the owner of the premises on which a vending facility is located. Absent independent analysis of the cause for the contract and license termination, vendors could be subject to the whim of premises owners who might request termination for any number of reasons, valid or invalid.

Our decision, of course, does not render Section 7012.5(b) of the BBVS Manual completely invalid. We think it is proper for the owner of premises on which a vending facility is located to request an investigation into the operation of a facility or, as here, to challenge the qualifications of a prospective vendor. If BBVS, following its investigation, finds that the vendor is not properly operating his or her facility, then contract and license termination proceedings may be in order. The vendor, however, is statutorily entitled to the protection of having BBVS first conduct its own review of the complaints against the vendor. We also conclude that under 34 C.F.R. §395.7(b), the termination hearing must occur *before* the contract and license may be validly cancelled.

The final matter to be resolved here is the relief to which Petitioner is entitled. At the DPW hearing and again in her appellate brief, Petitioner requests that she be awarded $1600 per month from the time her contract was cancelled and until she is awarded another facility with earning potential equal to the Delaware County Courthouse facility. The $1600 figure reflects Petitioner's testimony that the difference in net monthly income between her present facility and the new location would be $1600. We do not think however, that an award of damages is proper at this

stage of the proceedings. While we agree that proper procedures were not followed prior to the revocation of Petitioner's contract and license, we conclude that the proper remedy at this point is for BBVS to conduct an investigation into the merits of the Delaware County officials' concerns regarding her performance as a vendor. If BBVS is satisfied, following its investigation, that Petitioner is not operating her facility in accord with applicable rules and regulations, then a pre-termination hearing would be in order. If, on the other hand, BBVS determines that the County's concerns were invalid, Petitioner could have a claim for damages pending award of a new facility with earning potential commensurate to the Delaware County Courthouse facility. We will render no decision, however, as to whether a potential claim for damages would lie with DPW or with the Board of Claims.

We, accordingly, will reverse and remand for further proceedings.

ORDER

The final administrative action order of the Department of Public Welfare, dated November 3, 1982, is hereby reversed and the matter is remanded for further proceedings consistent with the foregoing opinion.

Judge WILLIAMS, JR. did not participate in this decision.